Claire Loebs Davis, WSBA #39812
ANIMAL & EARTH ADVOCATES, PLLC
20520 105th Ave., SW
Vashon, WA 98070
Tel: (206) 601-8476
claire@animalearthlaw.com
*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ALLIANCE FOR THE WILD ROCKIES,<br><br>Plaintiff,<br><br>v.<br><br>U.S. FOREST SERVICE, JOSHUA WHITE, Forest Supervisor, Colville National Forest, CARIN VADALA, Newport-Sullivan Lake District Ranger, U.S. Forest Service.<br><br>Defendants. | Case No. 2:24-cv-00157-RLP<br><br>**RESPONSE TO MOTION TO STRIKE**<br><br>**4/17/2025**<br>**Without Oral Argument** |

The Appendix in Support of Motion for Summary Judgment ("Appendix" or "A-_")[1] (ECF 24-1) furnished the Court with 12 maps illustrating various aspects of the Trails Project and displaying information contained in the administrative record ("Record"), incorporated into the Record by reference, or publicly available and not subject to reasonable dispute. Defendants do not contest the accuracy of any of these maps or the information they reflect, nor do they challenge the reliability of the sources identified in the caption for each map. Instead, Defendants move to strike eight of the maps as an untimely and improper attempts to supplement the Record. *See* Defendants' Motion to Strike Extra Record Materials ("Motion to Strike") (ECF No. 33) at 4-6. Plaintiff asks the Court to consider the maps in the Appendix as illustrative and summary aids that display information contained in some form in the Record, all of which was before the Service at the time of the challenged decision.

## I.    FACTUAL BACKGROUND

Each map in the Appendix is accompanied by a caption noting the sources for the information displayed in the map. The discussion below elaborates upon, and in some cases, supplements, the sources listed in the Appendix for each map. Some of the data used in the maps is from an online public file for the Trails Project ("Trails Project File"). Following a request from Paul Sieracki on Feb. 7, 2020, Forest Environmental Coordinator Christy Merritt responded that the data he requested was

---

[1] Terms used for the first time are defined here, while other terms have the same meaning as described in the list of Acronyms and Short Citations at the beginning of Plaintiffs' Combined Response and Reply.

RESPONSE TO MOTION TO STRIKE    1

"in the geodatabase on the public site." AR 2459 (email documenting exchange). On Feb. 14, 2020, Ms. Merritt emailed Mr. Sieracki a link to the Trails Project File. AR 2459 (showing link). The Service temporarily disabled the link, but it works now: https://www.fs.usda.gov/project/colville/?project=54315 ("Comment EA: Draft Proposed Action-GIS-data-October 2020.zip"). Similar data is incorporated into the Record at AR 4311, which references "Trail Project Record GIS Data," including "Shapefiles [that] are incorporated by reference and are available upon request."[2]

Mr. Sieracki gathered the data described below and used GIS software to compile it into the maps reproduced in the Appendix.

## II.   ARGUMENT

The Service's Motion to Strike is based on the premise that the maps in the Appendix are being offered to supplement or complete the Record. They are not. Rather, all of the information contained in these maps is (1) contained in the Record; (2) incorporated into the Record by reference; or (3) subject to judicial notice. As a result, Plaintiff need not demonstrate that the Record is incomplete or that the maps qualify as an exception to the record-review rule. Nor is it a concern that these exact

---

[2] Plaintiff did not initially request the data at AR 4311 because it already had the data it needed from the Trails Project File. *See* Sieracki Decl. at ¶ 8. The Service has not pointed to any errors in the maps developed from that data. However, out of an abundance of caution, Plaintiff has requested the data at AR 4311, and once it is received, Mr. Sieracki will compare it against the data in these maps. If Mr. Sieracki detects any substantive differences, Plaintiff will file an errata with substitute maps.

RESPONSE TO MOTION TO STRIKE    2

maps were not before the agency at the time of the decision, because all the information contained in them was before the agency or was easily obtainable by the agency from public sources whose accuracy cannot be questioned. It is thus within the Court's discretion to consider the maps under Federal Rules of Evidence 107, 1006, and 201(b). Plaintiff addresses each map in turn.

1. **Figure 3 at A-4**

Figure 3 combines three maps from the Record, which divide the Project Area into separate areas to show lots marked for commercial and non-commercial logging and burning. Figure 3 displays the scope of work planned for the entire Project Area.

The basic data for Figure 3 is from the Trails Project File. It remains publicly accessible as part of file, which is incorporated by reference through the description and link shown at AR 2459. *See Nw. Envtl. Def. Ctr. v. Nat'l Marine Fisheries Serv.*, 647 F. Supp. 2d 1221, 1247 (D. Or. 2009) ("NEPA provides for incorporation by reference as long as the incorporated material is reasonably available for inspection and its content is briefly described") (internal quotations and citations omitted).

Mr. Sieracki obtained the GIS datasets for the Kings Lake, Mill Creek and Kalispel Moon Timber sales through a Freedom of Information Act request to the Service. The same data is embedded within, and would have been necessary for the creation of, multiple maps in the Record, including those referenced as sources in the Appendix. *See* App. at A-4 (caption showing sources); AR 4303-05 (maps of three timber sales) and AR 4835 (map of Project Area). Other maps using the same data are found throughout the Record. *See, e.g.*, AR 340-343 (EA Appendix A), AR

RESPONSE TO MOTION TO STRIKE    3

856 (EA Figure 1), AR 4302 (Project Area map) and AR 4281, 4293 and 4279 (timber sale maps).

Figure 3 should be considered as illustrative aid under Fed. R. Evid. 107(a), "to help the trier of fact understand the evidence[.]" This information was before the Service at the time of its decision, and it can point to no prejudice that would come from the Court being able to view three Record maps combined into one.

**2. Figure 5 at A-6**

Figure 5 shows the road structure as it existed before the Project, combined with the Service's proposed permanent and temporary roads in the Project Area. It was submitted to help the Court visualize the road density and road placement discussed in the Motion for Summary Judgment and Defendant's Cross Motion. *See* MSJ at 18-21 and Cross MSJ at 22-29. It simplifies the map at AR 1931 and combines it with geospatial data on the Project's proposed permanent and temporary roads, so the Court to visualize how the new roads fit into the framework. It is designed to illuminate analyses of roads found in the Record. *See, e.g.* AR 859-61, 866-67, and 916 (EA) and AR 634-35 and 637 (Transportation Resource Report).

Much of the data used to assemble Figure 5 is from the Record. Some of the geospatial data is from the Trails Project File, incorporated into the Record by reference. Similar road GIS data is referenced elsewhere in the Record (*see, e.*g, AR 1830) and would have been necessary to create other maps in the Record. *See, e.g.* AR 1931 (map of pre-Project road system) and 12689 (proposed road changes).

Data on active roads not available through the above sources is open-source

RESPONSE TO MOTION TO STRIKE    4

data from the Washington Department of Natural Resources ("WDNR"): https://data-wadnr.opendata.arcgis.com/datasets/bfdb0455c3b24aa6ae46c9502f814c25_5/explore.

Figure 5 is offered to assist the Court in understanding information in the Record. It is properly considered as an illustrative aid under Fed. R. Evid. 107(a), or as a summary to prove content under Fed. R. Evid. 1006, to display voluminous road data that the Court could otherwise not conveniently examine.

Because the Service did not provide roads data as part of the Project file, Mr. Sieracki pulled some of the background data from the WDNR database. The Court can take judicial notice of this data as not subject to reasonable dispute, because it is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

### 3. Figure 7 at A-8

Figure 7 illustrates the reductions the 2020 LAU Revision made to lynx territory in the Project Area, by comparing the lynx territory and LAUs that existed before 2020 to the new lynx range used by the Project. MSJ at 24-26. This difference is important to multiple claims. *See* MSJ at 8-11, 24-26. Most of the data used to assemble Figure 7 is included in the Record or incorporated by reference therein, including through the Trail Project File.

The same data is embedded within, and would have been necessary for the creation of, multiple maps in the Record, including those referenced as sources in the Appendix. *See* App. at A-8; AR 4835, Fig. 1; AR 340-343 (Appendix A to the

EA) and AR 6326, Figure 2 (showing comparison of 1993 designated habitat to post-2020 designated lynx range). The same data was also illustrated at AR 6314.

The geospatial data for the Hungry Mountain Roadless Area is open-source public data provided by the Forest Service, available at https://data.fs.usda.gov/geodata/edw/datasets.php (search keyword "Roadless areas: 2001 roadless"). The metadata for the pre-2020 LAUs in the Idaho Panhandle National Forest was also derived from open-source public data from the Service, at https://www.fs.usda.gov/Internet/FSE_DOCUMENTS/stelprdb5097409.pdf.

Figure 7 is offered to assist the Court in understanding information in the Record and may be considered as an illustrative aid under Fed. R. Evid. 107(a). The Court can take judicial notice of the open-source public data from the Forest Service as not subject to reasonable dispute, because it is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

### 4. Figure 8 at A-10

Figure 8 shows Grizzly Bear Management Units, Bears Outside Recovery Zone areas, and the Hungry Mountain Roadless Area in relationship to the Project Area and designated areas for commercial and non-commercial logging and burning in the Project Area. It helps illustrate Plaintiff's claims related to the proximity of the Project Area to areas essential to grizzly bear recovery. *See* MSJ at 26-30. All data used to assemble Figure 8 is included in the Record or incorporated by reference therein, including through the Trail Project File. The same data is embedded within,

and would have been necessary for, the creation of multiple maps included in the Record, including the maps Plaintiff referenced as sources in the Appendix. *See* App. at A-10 (caption for this map). Data incorporated into this map is also displayed at AR 9655 (Figure 2) and discussed at AR 9655-56.

The geospatial data for the Hungry Mountain Roadless Area is open-source public data provided by the U.S. Forest Service, available at https://data.fs.usda.gov/geodata/edw/datasets.php (search keyword "Roadless areas: 2001 roadless").

Figure 8 is offered to assist the Court in understanding information in the Record and may be considered as an illustrative aid under Fed. R. Evid. 107(a). The Court can take judicial notice of the open-source public data from the Forest Service as not subject to reasonable dispute, because it is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

**5. Figure 9 at A-11**

Figure 9 is a close-up of the northern Project Area, where proposed roads would abut areas essential to grizzly recovery. Most of the data used to assemble Figure 9 is included in the Record or incorporated by reference therein, including through the Trail Project File. The same data is embedded within and would have been necessary for the creation of multiple maps included in the Record, including the maps Plaintiff referenced as sources in the Appendix. *See* App. at A-11 (caption for this map). Data incorporated into this map is also discussed in the scientific

article found at AR 9655-62 and displayed in the maps at AR 9657-58.

Data on pre-existing roads not available from the above sources was derived from open-source GIS data provided by WDNR and available at https://data-wadnr.opendata.arcgis.com/datasets/bfdb0455c3b24aa6ae46c9502f814c25_5/explore?location=44.444685%2C54.796711%2C2.38 (replacing broken link at A-11).

Figure 9 is offered to assist the Court in understanding information in the Record and may be considered as an illustrative aid under Fed. R. Evid. 107(a). The Court can take judicial notice of the open-source public data from WDNR as not subject to reasonable dispute, because it is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

**6. Figure 10 at A-12**

Figure 10 illustrates the overlap between the Project Area and areas essential to grizzly bear recovery, including recovery areas, occupied ranges, and areas where grizzlies "may be present." Some of the data reflected in Figure 10 is included in the Record or incorporated by reference therein, including through the Trail Project File.

Some of this data is embedded within and would have been necessary to create multiple maps included in the Record, including the maps Plaintiff referenced as sources in the Appendix. *See* App. at A-12 (caption for this map).

Data on grizzly bear occupied ranges and areas where bears "may be present" was derived from open-source public data from the U.S. Fish and Wildlife Service, available at: https://www.fws.gov/species/grizzly-bear-ursus-arctos-horribilis/map

and https://www.fws.gov/media/grizzly-bear-may-be-present-map-updated-62322.

Figure 10 is offered to assist the Court in understanding information in the Record and may be considered as an illustrative aid under Fed. R. Evid. 107(a). The Court can take judicial notice of the open-source public data from the U.S. Fish and Wildlife Service as not subject to reasonable dispute, because it is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

### 7. Figure 11 at A-13

Figure 11 shows the Project's proposed logging in relationship to mapped goshawk habitat and a designated flammulated owl nest stand. MSJ 30-34. The data reflected in Figure 11 was largely derived from the maps at AR 4835 and AR 12718-19. Figure 11 is offered to assist the Court in understanding information in the Record and may be considered as an illustrative aid under Fed. R. Evid. 107(a).

### 8. Figure 12 at A-14

Figure 12 illustrates the irregular and fragmented boundaries of the Colville National Forest and the various ecoregions within its boundaries, to demonstrate that the Forest boundaries do not correspond to a uniform landscape. *See* MSJ at 35-36. Some of this data is represented at AR 16734. The remaining data is open-source public data provided by the Service on Forest boundaries, found at https://data.fs.usda.gov/geodata/edw/datasets.php?xmlKeyword=administrative and open-source data from the U.S. Environmental Protection on mapped ecoregions, available at https://www.epa.gov/eco-research/ecoregion-download-files-state-

region-10#pane-45EPA.

Figure 12 is offered to assist the Court and may be considered as an illustrative aid under Fed. R. Evid. 107(a). The Court can take judicial notice of the open-source public data from the Forest Service and the U.S. Environmental Protection Agency as not subject to reasonable dispute, because it is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

### III. CONCLUSION

Plaintiff respectfully asks the Court to exercise its discretion to consider the maps provided in the Appendix, under Fed. R. Evid. 107, 201(b), and 1006.

Respectfully submitted this 7th day of April 2025.

ANIMAL & EARTH ADVOCATES, PLLC

/s/ *Claire Loebs Davis*
Claire Loebs Davis
20520 105th Ave. SW
Vashon, WA 98070
Tel: (206) 601-8476
claire@animalearthlaw.com

*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on April 4, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/EMF system, which will send notification of this filing to all counsel of record.

*s/ Claire Loebs Davis*
Claire Loebs Davis

ANIMAL & EARTH ADVOCATES, PLLC
20520 105TH AVE. SW
VASHON, WA 98070
206.601.8476  FAX: 206.456.5191